UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONTRELL MOORE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:14CV2056 RLW |
| | ) |
| JASON LEWIS, et al.,[1] | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Montrell Moore for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition is fully briefed and ready for disposition.

### I. Procedural History

Petitioner Montrell Moore is currently incarcerated at the Southeast Correctional Center ("SECC") pursuant to the judgment and sentence of the Circuit Court of St. Louis City, Missouri. (Resp't's Ex. 3 pp. 95-100) On August 11, 2010, a jury found Petitioner guilty of second-degree murder, abuse of a child resulting in death, endangering the welfare of a child in the first degree, possession of a controlled substance, possession of marijuana under 35 grams, and possession of drug paraphernalia. (Resp't's Ex. 6 p. 1; Resp't's Ex. 3 pp. 7, 83-88) On September 10, 2010, the court sentenced him to consecutive terms of life imprisonment on the murder and child abuse resulting in death convictions; consecutive terms of 7 years' imprisonment on the endangering

---

[1] Jason Lewis is now the warden of Western Missouri Correctional Center, where Petitioner is housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Jason Lewis' name will be substituted as the named respondent in this action. Further, because Petitioner challenges future consecutive sentences, Missouri Attorney General Joshua D. Hawley is also a proper party respondent. 28 U.S.C. § 2254, Rule 2(b). Future pleadings shall reflect these changes in the caption.

the welfare of a child and possession of a controlled substance counts; and concurrent one year terms of imprisonment on the marijuana and drug paraphernalia counts. (Resp't's Ex. 3 pp. 95-100) Petitioner filed a direct appeal, and on December 13, 2011, the Missouri Court of Appeals affirmed the judgment of the trial court. (Resp't's Ex. 6) Petitioner then filed Motions to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp't's Ex. 10 pp. 29-33, 41-48) Appointed counsel filed an amended Rule 29.15 motion on July 16, 2012. (*Id.* at pp. 50-72) On May 14, 2013, the motion court denied Petitioner's motion for post-conviction relief. (*Id.* at pp. 79-86) On May 13, 2014, the Missouri Court of Appeals affirmed the judgment of the motion court. (Resp't's Ex. 13) On December 15, 2014, Petitioner filed the present petition for habeas relief in federal court.

## II. Factual Background[2]

In June of 2009, Petitioner was living with his girlfriend, L.C., and her two children, S.B. and R.W., ages 2 and 9 respectively. On June 26, 2009, L.C. gave S.B. a bath and then took him downstairs around 11:00 p.m. where he slept on a sectional couch. During the night, L.C. heard S.B. whining so she went downstairs to check on him. Petitioner was in the kitchen and told L.C. that nothing was wrong with S.B. During the night, S.B. awoke and was fussy and loud. In the morning, L.C. woke up around 4:30 a.m. to get ready for work. She tucked in S.B., told him to go back to sleep, and left for work around 5:00 a.m. L.C.'s fifteen-year-old sister, T.C., was staying there to help with S.B. She slept on the opposite end of the couch from S.B. and awakened to knocks at the door from paramedics. Around 8:00 a.m., Petitioner called L.C. to inform her that S.B. had been taken to the emergency room because his face was peeling. Petitioner said that he found S.B. drinking a cleaning fluid. When S.B. arrived at the hospital,

---

[2] The Court sets forth the facts as stated in the Missouri Court of Appeals' opinion in *Moore v. State*, 431 S.W.3d 15 (Mo. Ct. App. 2014).

2

S.B. was not breathing and was in complete cardiopulmonary arrest. The ER physician found a burn on S.B.'s face that was consistent with scalding from a very hot liquid and found no indication that S.B. had ingested a chemical cleaning fluid. The doctor also found a bruise on S.B.'s face and large bruises in the shape of hand prints, finger prints, and fist marks along S.B.'s rib cage.

When the hospital workers informed Petitioner that S.B. could not be resuscitated, Petitioner started hitting the walls and apologizing. When L.C. arrived at the hospital, S.B. had already passed away. L.C. hit Petitioner and asked what he did to her son. Petitioner again apologized. However, he provided inconsistent stories as to how S.B. was injured. He finally admitted that he struck S.B. several times with his hand, and he wrote an apology letter to L.C. from jail. The medical examiner found extensive injuries on S.B., including a blunt force injury on his forehead, broken ribs on both sides, punctured lungs, bruising on his heart, a tear in the liver, and a lacerated spleen and kidney. Cause of death was ruled as abdominal blunt force trauma. *Moore v. State*, 431 S.W.3d 15, 17-18 (Mo. Ct. App. 2014).

### III. Petitioner's Claims

In his Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, Petitioner raises six claims for federal habeas relief. Petitioner argues in Ground One that the trial court erred in not striking juror 837 for cause because the juror was biased. In Ground Two, Petitioner asserts that the trial court erred in allowing witness testimony regarding prior child abuse of S.B. because it improperly showed a propensity for child abuse. Ground Three alleges that the trial court erred by admitting autopsy photos. In Ground Four, Petitioner contends that the trial court erred in denying Petitioner's motion for a new trial because the charges of second degree murder and abuse of a child resulting in death violated the ban on double jeopardy. Petitioner asserts in

Ground Five that trial counsel was ineffective for failing to call a potential witness, Tayrean Smith. Finally, in Ground Six, Petitioner contends that trial counsel was ineffective for failing to present theory that S.B.'s injuries were caused by someone else.

## IV. Legal Standards

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also*

*Bucklew v. Luebbers* 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citation omitted). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* A federal court will consider a defaulted habeas claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.*

## V. Discussion

In the instant case, Respondent concedes that Petitioner timely filed his petition and properly raised his claims in state court. Thus, Petitioner's claims are exhausted and are not procedurally barred from federal review.

### A. Ground One

Petitioner argues in ground one that the trial court erred in not striking juror 837 for cause because the juror was biased. Specifically, Petitioner contends that the juror repeatedly made statements during voir dire that demonstrated bias against Petitioner, depriving him of a fair trial. Petitioner raised this ground on direct appeal. The Missouri Court of Appeals addressed Petitioner's claim and found that the trial court did not abuse its discretion in failing to strike the venireperson for cause. (Resp't's Ex. 6 p. 8) The *Moore* court extensively quoted the voir dire

5

transcript, wherein the juror indicated that she and three female cousins had been abused by an uncle. (*Id.* at pp. 4-8) She stated that she would have difficulty listening to the evidence due to her experience as a mother and the fact that a minor was involved. (*Id.* at pp. 5-6) However, the juror also stated that her experience would not affect her ability to listen to the evidence and be fair to both sides. (*Id.* at pp. 5-7) The Missouri Court of Appeals addressed Petitioner's claim that the trial court erred in failing to strike the venireperson because she demonstrated an inability to remain impartial and found:

> Here, venireperson Raymond consistently stated that she would be able to be fair to both sides and listen to all the evidence before reaching a decision. Nevertheless, Moore claims that the trial court had a duty to independently examine venireperson Raymond. However, "the court only has a duty to make an independent inquiry when the [venireperson] is equivocal about [her] ability to be fair and impartial." *Garvey*, 328 S.W.3d at 415. After reviewing the context of the entire examination of venireperson Raymond, we fail to find she equivocated about her ability to be fair and impartial. Although her answers indicated that she may find the trial hard to handle and emotionally difficult, she continuously gave assurance that she would be impartial and base her decision on the evidence presented. Accordingly, the trial court did not abuse its discretion in failing to strike venireperson Raymond for cause. Point one is denied.

(*Id.* at pp. 7-8)

"The issue of an individual juror's partiality is a question of 'historical fact' for the trial court, and is entitled to 'special deference.'" *Reynolds v. Russell*, No. 4:14 CV 1060 CDP, 2015 WL 7273322, at *4 (E.D. Mo. Nov. 18, 2015) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036, 138 (1984)). "'Under 28 U.S.C. § 2254(d), a habeas court must, of course, afford this determination the presumption of correctness due a state court's factual findings.'" *Id.* (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1326-27 (8th Cir. 1993)). "'The question for this court, then, is whether the state court's conclusion that the juror would be impartial is fairly supported by the record.'" *Id.* (quoting *Logan*, 994 F.2d at 1327). Petitioner has the burden of showing "with clear and convincing evidence . . . that the state court incorrectly resolved the factual issue of

6

[Petitioner's] bias." *McFarland v. Wallace*, No. 4:12CV290 RWS, 2015 WL 1347001, at *25 (E.D. Mo. Mar. 19, 2015).

Here, the state court found that Plaintiff was unequivocal in stating that she could remain fair and impartial and would base her decision on the evidence presented. (Resp't's Ex. 6 pp. 7-8) Because Petitioner has not presented clear and convincing evidence to the contrary, the Court "must accept the state court's factual finding that [Ms. Raymond] was not actually biased." *Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Thus, the Court finds that Petitioner's first ground for habeas relief lacks merit and is denied.

### B. Ground Two

In his second ground, Petitioner claims that the trial court erred in allowing witness testimony regarding prior child abuse of S.B. because it improperly showed a propensity for child abuse. Specifically, Petitioner asserts that the testimonies from Tia Coleman and Re'Gan Wilson regarding Petitioner's prior bad acts violated his right to be tried only for the charged crimes. The Missouri Court of Appeals addressed this claim and found no prejudice from the admission of the evidence in light of the substantial evidence against Petitioner. (Resp't's Ex. 6 p. 9) The state court did not find that the admission of Coleman and Wilson's testimony was inadmissible. However, the court assumed *arguendo* that those testimonies were inadmissible and found, "in light of all the evidence which was properly admitted in this case, we conclude that there is not a reasonable probability that the jury would have acquitted [Petitioner] but for the allegedly erroneously admitted testimony of Coleman and Wilson." (*Id.*)

The challenged testimony included Coleman testifying that she saw Petitioner "grab the victim's head to force it to turn around so the victim would go to sleep" and that "the victim had scratches all over his body and a scar across his forehead" which the victim attributed to an iron.

7

(*Id.* at p. 8) Wilson testified that she witnessed Petitioner "hit the victim in the leg and arm" and "spank the victim if he ever got off the couch." (*Id.* at p. 9) In addition, Wilson recalled that she heard Petitioner "punch the victim in the stomach, causing the victim to throw up." (*Id.*) Petitioner argued on appeal, as he does in the present Petition, that the trial court admitted this testimony for the purpose of showing his propensity for abusing the victim. (*Id.*) The appellate court found that Petitioner was not prejudiced by the admission of this testimony. (*Id.* at p. 11)

"'Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.'" *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir.1993)). "The question of undue prejudice in the admissibility of evidence addresses itself to the discretion of the trial court." *Anderson v. Goeke*, 44 F.3d 675, 678 (8th Cir. 1995). Federal courts on habeas review "will reverse a state court evidentiary ruling only if the 'petitioner ... show[s] that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Id.* at 679 (quoting *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987) (internal quotation omitted)). "'To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Id.* (quoting *Hamilton*, 809 F.2d at 470).

Here, the Court gives appropriate deference to the state court's finding that Petitioner failed to demonstrate the requisite prejudice. The totality of evidence presented at trial supported Petitioner's conviction regardless of the witnesses' testimonies. Petitioner changed his story several times before finally admitting to striking the victim. Upon hearing that S.B. could not be

8

revived, he began hitting the walls and apologizing. In addition, he wrote a letter to the victim's mother stating he was sorry. Further, the medical evidence showed burns consistent with immersion into a hot liquid and not ingestion of cleaner. In addition, the bruising was consistent with hand marks from an adult, and the cause of death resulted from a massive amount of force. Based on this evidence, Petitioner is unable to demonstrate that the testimony of Coleman and Wilson "fatally infected the proceedings or that there is a reasonable probability that [the testimony] affected the outcome of the trial." *White v. Wallace*, No. 4:14-CV-1357 (CEJ), 2017 WL 1374711, at *4 (E.D. Mo. Apr. 17, 2017). Thus, the Court concludes that the appellate court's determination that the trial court did not err in admitting the testimony of Coleman and Wilson was not contrary to or an unreasonable application of clearly established federal law. The Court therefore finds that Petitioner's second ground for habeas relief lacks merit.

### C. Ground Three

In his third ground for habeas relief, Petitioner argues that the trial court erred by admitting autopsy photos. Specifically, he claims that the three photos showed the victim on the autopsy table with his skin pulled away and internal organs exposed, which caused three jurors to cry and the judge to remark that the photos "obviously affected" the jurors. Petitioner raised this claim in state court. According to the appellate court's decision, after introducing the first photo, Petitioner's attorney approached the bench and stated, "[i]t's clear that at least three jurors are openly crying. Several others aren't looking at the pictures and looking disgusted by the whole thing, and several are looking down." (Resp't's Ex. 6 p. 11) The trial judge responded, "I wouldn't say disgusted, but they are obviously affected." (*Id.*) The trial court admitted the next two photos but did not publish them. (*Id.* at p. 12) On appeal, Petitioner argued that the "photographs were unduly gruesome and served only to arouse the emotions of the jury and

9

prejudice the jury against him in violation of his right to an impartial jury." (*Id.*) In addition, Petitioner argued that the photos were unnecessary because Dr. Nanduri, the medical examiner, testified to the extent of the victim's injuries. (*Id.*)

The Missouri Court of Appeals found the trial court did not abuse its discretion in admitting the photos:

> The trial court is given broad discretion in the admission of photographs, and our review is limited to whether the trial court abused that discretion. *State v. Johnson*, 244 S.W.3d 144, 161 (Mo. banc 2008). The photographs are not inadmissible just because other evidence also describes what is shown in the photograph. *Id.* If the photograph is relevant, it should not be excluded even if it is inflammatory. *Id.* Generally, even gruesome photographs are admissible if they: (1) show the nature and location of wounds; (2) enable jurors to better understand the testimony at trial; and (3) aid in establishing an element of the State's case. *Id.* at 161-62.
>
> Here, the photographs aided the jury in understanding the nature, extent, and location of the internal wounds the victim suffered. The medical examiner, Dr. Nanduri, testified about the various injuries the victim suffered. . . . These internal injuries were not readily apparent from other external photos of the victim, and the photographs complained of by Moore served to corroborate and help explain to the jury Dr. Nanduri's testimony about the nature and location of the injuries suffered by the victim. Furthermore, the State should not be denied evidence merely because the photographs are gruesome. Although the photographs may have been gruesome, the gruesome nature of the photographs is the result of the gruesome nature of the crime. *Id.* at 161. "To exclude graphic evidence solely because it is graphic would deprive the State of evidence when it needs it to [sic] most: the evidence would be inadmissible to prosecute what are typically the most serious crimes." *State v. Mayes*, 63 S.W.3d 615, 632 (Mo. banc 2001) (quoting *State v. Johnson*, 930 S.W.2d 456, 462-63 (Mo. App. W.D. 1996)).
>
> Moore's argument that the photographs were unnecessary because the cause of death was detailed through testimony and conceded by his defense is also without merit. *See State v. Rios*, 234 S.W.3d 412, 427 (Mo. App. W.D. 2007) (finding photographs admissible even where the cause of death was not in dispute); *State v. Hawkins*, 58 S.W.3d 12, 24 (Mo. App. E.D. 2001) (stating that photographs are not inadmissible merely because the defendant stipulates to some of the issues involved). Because these photographs showed the nature and location of wounds, helped the jury understand the medical examiner's testimony, and aided in the State's case, there was no abuse of discretion in admitting them into evidence. Point three is denied.

(Resp't's Ex. 6 pp. 12-13)

As stated above, admissibility of evidence is a matter of state law, and the Court reviews such admissibility in habeas cases "only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan*, 436 F.3d at 958 (internal quotation omitted). The Court finds that Petitioner has failed to demonstrate that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Anderson*, 44 F.3d at 679 (quotation omitted). The autopsy photos were relevant and probative in showing the internal injuries sustained by the victim, and they corroborated the testimony of the medical examiner. *See Rousan*, 436 F.3d at 959 (finding the district court did not err in denying habeas relief where the photographs corroborated the testimony of a key witness for the state, assisted the jury in understanding the pathologist's testimony, and assist the state's proof of deliberation); *Kuntzelman v. Black*, 774 F.2d 291, 292-93 (8th Cir. 1985) (finding no constitutional error in the admission of "flagrantly gruesome" photographs where the photos "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [petitioner]"). Thus, the decision of the Missouri Court of Appeals, finding no error in the admission of the autopsy photos, was not contrary to or an unreasonable application of clearly established federal law. Petitioner's third ground for habeas relief fails on the merits.

### D. Ground Four

Next, Petitioner claims that the trial court erred in denying Petitioner's motion for a new trial because based on the trial court's failure to require the State to proceed with either the charge of first/second degree murder or abuse of a child resulting in death. Petitioner contends

11

that both charges involved the same elements, and the act Petitioner was convicted of constituted a continuous course of conduct, thus violating his right against double jeopardy. Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals no abuse of discretion. (Resp't's Ex. 6 p. 16) Specifically, the appellate court found:

> Moore first contends his convictions for second-degree murder and abuse of a child resulting in death constituted multiple convictions for the same offense. When determining whether successive prosecutions violate double jeopardy, the proper test to apply is the *Blockburger* "same-elements" test. *State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010) (citing *U.S. v. Dixon*, 509 U.S. 688, 704 (1993)). The same-elements test asks, "whether each offense contains an element not contained in the other; if not, the Double Jeopardy Clause bars a successive prosecution." *Id.* (quoting *State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994)). The court's focus is with the elements of the offense at issue and not with the underlying conduct. *Id.*
>
> A person commits second degree murder if the person 'knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." [Mo. Rev. Stat.] Section 565.021.1. A person commits abuse of a child resulting in death if the person "knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old" and "a child dies as a result . . . ." Section 568.060. Applying the same-elements test to these offenses, this Court has already held that "each of these offenses has an element that the other does not and, thus, constitute separate offenses." *State v. Gray*, 347 S.W.3d 490, 507 (Mo. App. E.D. 2011). Accordingly, Moore did not suffer from multiple convictions from the same offense.
>
> Moore also argues that his convictions violates section 556.041.4 which states that a person cannot be convicted of more than one offense if "[t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses." However, in *Gray*, this Court has already held that the offenses of second-degree murder and abuse of a child resulting in death are not defined as a continuing course of conduct. 347 S.W.3d at 507. . . . Accordingly, Moore's convictions do not constitute a continuing course of conduct and do not violate section 556.041.4.
>
> Having found that Moore did not suffer multiple convictions for the same offense and that his offenses do not constitute a continuing course of conduct, the trial court did not abuse its discretion in denying Moore's motion for a new trial. Point four is denied.

(Resp't's Ex. 6 pp. 15-16)

"The Fifth Amendment's Double Jeopardy Clause provides a criminal defendant with three protections." *Dodge v. Robinson*, 625 F.3d 1014, 1017 (8th Cir. 2010) (citation omitted). "The first two guard against successive prosecution, either after an acquittal or after a conviction," and the third protects against cumulative punishment. *Id.* While Petitioner does not specify which protection he is invoking, the Court notes that Petitioner was not subjected to successive prosecution. Thus, the Court presumes that Petitioner challenges his sentences.[3] "'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.* (quoting *Missouri v. Hunter,* 459 U.S. 359, 366 (1983)). Thus, the third protection turns on legislative intent, and a court looks to the language of the two statutes. *Id.* at 1017-18. Where "neither statute specifically authorizes cumulative punishment, courts generally apply the rule of construction announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)." *Id.* at 1018. "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Id.* (quoting *Blockburger*, 284 U.S. at 304).

However, where cumulative punishment is imposed for violations of state law, whether the legislature authorizes such punishment is a question of state law. *Id.* "The Supreme Court

---

[3] Petitioner also argues that his conviction violates Mo. Rev. Stat. § 556.041, which provides that a defendant may not be convicted of more than one offense if "[o]ne offense is included in the other" or if "[t]he offense is defined as a continuing course of conduct . . . ." Mo. Rev. Stat. §§ 556.041.1 and 556.041.4. Because this does not raise a federal claim, the Court finds this argument is noncognizable in a federal habeas action. *See Poe v. Caspari,* 39 F.3d 204, 207 (8th Cir. 1994) (finding a claim asserting a violation of Missouri law, "without more, is not cognizable in habeas and does not justify relief under § 2254").

13

repeatedly has held, in the double-jeopardy context, that whether a state legislature intends cumulative punishment for two offenses is an issue of state law, over which state courts have final authority." *Id.* Thus, courts are bound by the Missouri court's construction of Missouri state statutes. *Id.* Missouri courts have held that the offenses of second degree murder and abuse of a child under the respective Missouri statutes each have "an element that the other does not and, thus, constitute separate offenses" under the *Blockburger* test. *State v. Gray*, 347 S.W.3d 490, 507 (Mo. Ct. App. 2011).

Therefore, "to the extent that the Missouri appellate court relied on its interpretation of Missouri law, upon concluding that the Missouri legislature intended cumulative punishment for murder and abuse of a child, issue concerning the interpretation of state law are not cognizable in federal habeas review." *Dixon v. Steele*, No. 4:13CV691SNLJ (NCC), 2016 WL 4427212, at *5 (E.D. Mo. June 15, 2016). Further, in analyzing Petitioner's double jeopardy claim, the Missouri appellate court properly applied the *Blockburger* same-elements test and considered legislative intent. Thus, the Court finds that the decision of the state court finding no violation of the Double Jeopardy Clause is not contrary to, and is a reasonable application of, federal law. Ground four in Petitioner's habeas petition is therefore without merit. *Id.*

### **E. Ground Five**

Petitioner argues in his fifth ground for habeas relief that trial counsel was ineffective for failing to call a potential witness, Tayrean Smith ("Smith"). Petitioner raised this claim in his Rule 29.15 post-conviction motion and on post-conviction appeal. Specifically, Petitioner contends that trial counsel was ineffective for failing to call Smith as a witness during trial because Smith would have testified that he never saw Petitioner interact inappropriately with the victim. The state court addressed this claim and found that counsel was not ineffective. The

appellate court noted, "Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffectiveness unless the movant clearly establishes otherwise. . . . If a potential witness's testimony would not unqualifiedly support the defendant's case, the failure to call the witness does not constitute ineffective assistance." *Moore*, 431 S.W.3d at 19 (citations omitted). The Missouri Court of Appeals quoted *Strickland* in addressing the reasonableness of counsel's investigation and found:

> At the evidentiary hearing, trial counsel testified by deposition that he tried to contact Smith at the phone number provided by Movant but was unable to reach him. Counsel said that when he informed Movant that he was unable to reach Smith at that number, Movant provided another phone number, which turned out to be a wrong number. Counsel also attempted to obtain Smith's home address but was unsuccessful. Movant provided no additional information to assist counsel in locating Smith.
>
> Movant testified that he gave Smith's phone number to counsel and that counsel informed him that he was unable to reach Smith. Movant acknowledged that he did not provide his attorney with any additional information to help locate Smith. Movant also acknowledged that he was aware that Smith was in the courtroom during his trial but Movant did not inform counsel of Smith's presence. Movant also admitted that he had lied to his attorney about what happened.
>
> Smith also testified at the evidentiary hearing. Smith said that in the months preceding Movant's crimes, he lived in the same apartment complex as Movant, that he never saw Movant hit S.B., and that S.B. did not appear to be afraid of Movant. Smith said that he did not know T.C. or R.W. Smith also indicated that he was not at L.C.'s apartment during the time that S.B. sustained his injuries.
>
> In its order denying post-conviction relief, the motion court found that Smith had "no credibility." The motion court further found that Smith's proposed testimony would not have unqualifiedly supported the defense's case because Smith was not present at the scene because he worked during the day and stayed at his girlfriend's home at night.
>
> The motion court's findings are supported by the record. The record clearly shows that counsel made a diligent effort and used reasonable means to contact Smith. After counsel informed Movant that he was unable to reach Smith, Movant provided no additional information to assist counsel in locating Smith. Movant also fails to explain why he did not inform counsel that Smith was present in the courtroom on the day of trial.

> In any event, Movant fails to demonstrate that Smith's testimony would have provided a viable defense. *See Williams v. State,* 168 S.W.3d 433, 442 (Mo. banc 2005). Smith admitted that he was not present at Movant's apartment during the time that S.B. sustained his fatal injuries. Moreover, there was strong evidence of Movant's guilt, including the medical testimony and physical evidence. Movant was the only adult in the apartment with S.B. at the time he sustained his fatal injuries. Movant admitted to police that he struck S.B. and that he fabricated stories to explain what happened to S.B. Movant said that he was "sorry" and "didn't mean to do anything." There was also evidence that Movant had struck S.B. on previous occasions. On one occasion, Movant punched S.B. in the stomach with enough force causing S.B. to throw up.
>
> Given the overwhelming evidence of Movant's guilt, there is no reasonable probability that the jury would have reached a different outcome had Smith testified. *See Bucklew v. State,* 38 S.W.3d 395, 400–01 (Mo. banc 2001). Accordingly, the motion court did not clearly err in finding that counsel was not ineffective for failing to call Smith as a witness. Point I is denied.

*Id.* at 19-20.

To establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* at 694; *Bucklew*, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016 (citation omitted).

As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

16

United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in *Strickland*." *Id.*; *see also Bucklew*, 436 F.3d at 1016 (where state court correctly identifies *Strickland* as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of the evidence presented.").

Here, Petitioner has failed to demonstrate that trial counsel's performance was deficient and prejudiced the defense. The record shows that Petitioner mentioned Smith as someone who was frequently present around Petitioner and the victim and could have testified that Petitioner was not abusive toward the victim. (Resp't's Ex. 9 p. 6) However, despite trying to speak with Smith, counsel was unable to contact him via information provided by Petitioner. (*Id.* at pp. 9-12) Smith testified at the post-conviction hearing that he was at the apartment with Petitioner and the victim all the time and never saw Petitioner hit the victim. (Resp't's Ex. 8 pp. 21-22) He further stated that he never heard from Petitioner's attorney but that Smith was present in the courtroom during the trial yet never informed counsel that he was there. (*Id.* at pp. 29-31) The record also reflects that Smith was not present at the time of the incident because he worked during the day and stayed at his girlfriend's home at night. (*Id.* at pp. 32-33)

Petitioner is unable to demonstrate that counsel's performance was deficient for failing to investigate and call Smith as a defense witness. Counsel diligently and reasonably attempted to contact Smith; however, Petitioner did not provide additional contact information for Smith, despite the fact that Smith was present in the courtroom during the trial. Further, Smith was not in the apartment on the date of the incident and was unable to speak to what occurred between

Petitioner and the victim. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and here, Petitioner has failed to overcome the presumption that counsel's failure to call Smith "might be considered sound trial strategy." *Strickland*, 466 U.S. at 690 (internal quotation marks omitted).

Furthermore, Petitioner is unable to demonstrate the requisite prejudice. The evidence against Petitioner was compelling, including physical evidence, medical evidence, and Petitioner's apologies. Petitioner has not shown that Smith's testimony would have provided a viable defense or otherwise would have changed the outcome of the trial. *Bucklew*, 436 F.3d at 1016; *see also Deck v. Steele*, 249 F. Supp. 3d 991, 1029 (E.D. Mo. 2017) (finding that because petitioner could not show that counsel's failure to investigate or call a witness to testify at trial prejudiced his defense, he could not demonstrate ineffective assistance of counsel). Thus, the Court finds that the state court reasonably applied *Strickland* in determining that counsel was not ineffective. *Id.* at 1021. Petitioner's fifth ground lacks merit and will be denied.

### F. Ground Six

In his sixth and final ground, Petitioner claims that trial counsel was ineffective for failing to present theory that S.B.'s injuries were caused by someone else. Petitioner argues that counsel failed to address with the doctors that the bruises on the victim were not necessarily caused by a large person such as Petitioner. Petitioner raised this claim in his motion for post-conviction relief and on appeal, arguing that the bruises could have been caused by the victim's mother or someone performing CPR. The Missouri Court of Appeals addressed this claim and found that counsel's choice was a matter of trial strategy and was not unreasonable. The appellate court noted the medical testimony that established the bruises were caused by a person of large stature such as Petitioner. *Moore*, 431 S.W.3d at 21. The state court further noted that

18

defense counsel asked the medical examiner whether the bruising could be consistent with a smaller fist or hand, to which the witness responded, "I don't think so." *Id.* In addition, the appellate court found:

> At the evidentiary hearing, defense counsel said that he did not attempt to establish that L.C. could have caused S.B.'s injuries because she had a "very good alibi," in that, she was at work during the time that S.B. sustained his fatal injuries. Counsel also indicated that S.B.'s injuries went far beyond any injuries that the child could have sustained as a result of CPR. Following the post-conviction hearing, the motion court issued its order, finding that defense counsel's decision not to pursue a defense theory that L.C. or CPR caused S.B.'s injuries was reasonable as a matter of trial strategy. We agree.
>
> "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Henderson v. State*, 111 S.W.3d 537, 540 (Mo. App. W.D. 2003). In the instant case, counsel gave a reasonable explanation for his decision not to pursue a defense theory that the child's mother could have inflicted the fatal injuries. Counsel concluded there was no basis for pursuing this particular line of defense because it was undisputed that L.C. was at work during the time that S.B. sustained his fatal injuries. There was also no evidence that CPR caused the child's fatal injuries. The overwhelming evidence supported the jury's conclusion that Movant caused S.B.'s death. Defense counsel's decision to abandon a non-viable defense theory was reasonable trial strategy. *See Hamilton v. State*, 208 S.W.3d 344, 349 (Mo. App. S.D. 2006). Accordingly, the motion court did not err in denying this claim. Point II is denied.

*Id.*

The Court agrees that trial counsel's decision not to pursue a defense that someone else caused the bruising was reasonable trial strategy. The record shows that the victim's mother was at work when the victim was injured. Further, there was no evidence that CPR caused the fatal injuries. As stated above, the evidence pointed to Petitioner as the person that caused the victim's death. "Post-conviction counsel cannot be ineffective for failing to pursue a non-meritorious claim." *Deck*, 249 F. Supp. 3d at 1029. "Based on the foregoing and the other evidence of record, and considering defense counsel's conduct based on his perspective at the

time, [the Court] find[s] that the strong presumption that defense counsel's performance 'falls within the wide range of reasonable professional assistance' is not overcome." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Because counsel's performance was not deficient, the Court need not consider the prejudice prong of *Strickland*. *Id.* Thus, the Court finds that the state court's determination that "[d]efense counsel's decision to abandon a non-viable defense theory was reasonable trial strategy" and was not ineffective assistance was not contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in *Strickland*. *Moore*, 431 S.W.3d at 21. Petitioner's sixth ground for habeas relief will be denied for lack of merit.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Montrell Moore for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accordance with this Order is entered on this same date.

Dated this 5th day of March, 2018.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE